**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| GILAT SATELLITE NETWORKS LTD., DOV BAHARAV, ELYEZER SHKEDY, DAFNA COHEN, MEIR SHAMIR, DAFNA SHARIR, AMIR OFEK, ISHAY DAVIDI, AYLON RAFAELI, AMIRAM BOEHM, COMTECH TELECOMMUNICATIONS CORP., and CONVOY LTD., | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon

personal knowledge with respect to himself, and upon information and belief based upon, *inter*

*alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on January 29, 2020 (the

"Proposed Transaction"), pursuant to which Gilat Satellite Networks Ltd. ("Gilat" or the

"Company") will be acquired by Comtech Telecommunications Corp. ("Parent"), a Delaware

corporation, and Convoy Ltd. ("Merger Sub," and together with Parent, "Comtech").

2.      On January 29, 2020, Gilat's Board of Directors (the "Board" or "Individual

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Comtech.  Pursuant to the terms of the Merger Agreement, Gilat's stockholders

will receive $7.18 in cash and 0.08425 shares of Parent common stock for each share of Gilat

common stock they own.

3.      On March 2, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Gilat common stock.

9.      Defendant Gilat is a company organized under the Laws of the State of Israel and a party to the Merger Agreement.  Gilat's common stock is traded on the NASDAQ Global Select

Market under the ticker symbol "GILT."

10.     Defendant Dov Baharav is Chairman of the Board of the Company.

11.     Defendant Elyezer Shkedy is a director of the Company.

12.     Defendant Dafna Cohen is a director of the Company.

13.     Defendant Meir Shamir is a director of the Company.

14.     Defendant Dafna Sharir is a director of the Company.

15.     Defendant Amir Ofek is a director of the Company.

16.     Defendant Ishay Davidi is a director of the Company.

17.     Defendant Aylon Rafaeli is a director of the Company.

18.     Defendant Amiram Boehm is a director of the Company.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21.     Defendant Merger Sub is a company organized under the Laws of the State of Israel, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Gilat (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable. As of January 24, 2020, there were approximately 55,493,258 shares of Gilat common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.    Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29.    Gilat is a leading global provider of satellite-based broadband communications.

30.    With thirty years of experience, the Company designs and manufactures cutting-edge ground segment equipment, and provides comprehensive solutions and end-to-end services.

31.    On January 29, 2020, Gilat's Board caused the Company to enter into the Merger Agreement with Comtech.

32.     Pursuant to the terms of the Merger Agreement, Gilat's stockholders will receive $7.18 in cash and 0.08425 shares of Parent common stock for each share of Gilat common stock they own.

33.     According to the press release announcing the Proposed Transaction:

Comtech Telecommunications Corp. (Nasdaq: CMTL) ("Comtech") and Gilat Satellite Networks Ltd. (Nasdaq: GILT; TASE: GILT) ("Gilat") jointly announced today that Comtech has agreed to acquire Gilat in a cash and stock transaction for $10.25 per Gilat ordinary share of which 70% will be paid in cash and 30% in Comtech common stock, resulting in an enterprise value of approximately $532.5 million. Founded in 1987 with its headquarters in Israel, Gilat is a worldwide leader in satellite networking technology, solutions and services with market leading positions in the satellite ground station and in-flight connectivity solutions markets and deep expertise in operating large network infrastructures. . . .

Leadership and Business Structure

Fred Kornberg, Comtech's Chairman of the Board and Chief Executive Officer ("CEO") will continue in his role as CEO of the combined company.  Michael Porcelain, Comtech's Chief Operating Officer, who was promoted and named President of Comtech earlier today, will work hand-in-hand with both Comtech and Gilat employees to maximize the potential of the combined company. Michael Bondi will continue in his role as Chief Financial Officer ("CFO") of the combined company. Comtech will continue to maintain its headquarters in Melville, New York.

Post-closing of the transaction, Gilat will become a wholly owned subsidiary of Comtech and will maintain its well renowned and highly regarded brand. Gilat will continue to maintain its corporate headquarters and research and development facility in Petah Tikva, Israel under the leadership of Yona Ovadia, Gilat's CEO and Adi Sfadia, Gilat's CFO. Mr. Sfadia will also be assuming the role of Gilat's Chief Integration Officer, helping to plan a smooth acquisition and to maximize shareholder value.

No Comtech or Gilat facility locations are expected to be closed as a result of the transaction and each key business area is expected to continue to be led by its respective existing proven leadership teams after the transaction closes.

Transaction Structure and Terms

Under the terms of the agreement, unanimously approved by both companies' Board of Directors, Gilat shareholders will receive total consideration of $10.25 per share, comprised of $7.18 per share in cash and 0.08425 of a share of Comtech

common stock for each share of Gilat held.

The total consideration of $10.25 represents a premium of approximately 14.52% to Gilat's 90-day volume-weighted average trading price.

Upon completion of the transaction, Gilat's shareholders will own approximately 16.1% of the combined company. . . .

Shareholder Support and Closing Conditions

Gilat's directors, executive officers and certain significant shareholders holding approximately 45% of Gilat's issued and outstanding shares in the aggregate have entered into voting agreements pursuant to which they have agreed, subject to certain terms and conditions, to vote in favor of the transaction.  In the upcoming weeks, Gilat will call for an Extraordinary General meeting of Shareholders to vote on the merger. The transaction requires the affirmative vote of the holders of a majority of the ordinary shares present (in person or by proxy) at the meeting and voting on such matter (including abstentions and broker non-votes).

The transaction is subject to customary closing conditions (including, among others, the approval of Gilat's shareholders and expiration of the applicable waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976) and the transaction is expected to close late in Comtech's fiscal year 2020 or the first part of its fiscal 2021. No approval by Comtech stockholders is required and the consummation of the transaction is not subject to any financing condition. . . .

Advisors

Goldman Sachs and Co. LLC is serving as an exclusive financial advisor to Comtech. Proskauer Rose LLP and Goldfarb Seligman & Co. are acting as Comtech's legal counsel. Alnitak & Co. Inc., Jefferies LLC and Quilty Analytics LLC are serving as financial advisors to Gilat. Naschitz Brandes Amir & Co. is acting as Gilat's legal counsel.

## *The Registration Statement Omits Material Information*

34.     Defendants filed the Registration Statement with the SEC in connection with the

Proposed Transaction.

35.     As set forth below, the Registration Statement omits material information with

respect to the Proposed Transaction, which renders the Registration Statement false and

misleading.

36.     First, the Registration Statement omits material information regarding Gilat's and Comtech's financial projections.

37.     With respect to Gilat's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38.     The Registration Statement fails to disclose Comtech's financial projections.

39.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Jefferies LLC ("Jefferies").

41.     With respect to Jefferies' Selected Public Companies Analyses, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Jefferies in the analyses.

42.     With respect to Jefferies' Selected Precedent Transactions Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Jefferies in the analysis.

43.     With respect to Jefferies' Discounted Cash Flow Analysis of Gilat, the Registration Statement fails to disclose: (i) the stand-alone unlevered, after-tax free cash flows that Gilat was forecasted to generate during the fiscal years ending December 31, 2020 through December 31, 2024 and all underlying line items; (ii) projected net operating loss carryforwards; (iii) the terminal

values of Gilat; and (iv) the individual inputs and assumptions underlying the range of perpetuity

growth rates of 1.5% to 2.5% and the discount rate range of 8.0% to 9.0%.

44.     With respect to Jefferies' analyses of price targets, the Registration Statement fails

to disclose: (i) the price targets observed by Jefferies in the analyses; and (ii) the sources thereof.

45.     With respect to Jefferies' analysis of premiums paid, the Registration Statement

fails to disclose: (i) the transactions observed by Jefferies in the analysis; and (ii) the premiums

paid in the transactions.

46.     When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

47.     Third, the Registration Statement omits the terms of the engagements of the

Company's additional financial advisors, Alnitak & Co. Inc. and Quilty Analytics LLC (together,

the "Advisors"), including: (i) the amount of compensation the Advisors have received or will

receive in connection with their engagements; (ii) the amount of the Advisors' compensation that

is contingent upon the consummation of the Proposed Transaction; (iii) whether the Advisors have

performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing

and nature of such services; and (v) the amount of compensation received by the Advisors for

providing such services.

48.     Full disclosure of investment banker compensation and all potential conflicts is

required due to the central role played by investment banks in the evaluation, exploration,

selection, and implementation of strategic alternatives.

49.     Fourth, the Registration Statement fails to disclose whether the Company entered

into any confidentiality agreements that contained standstill and/or "don't ask, don't waive"

provisions that are or were preventing the counterparties from submitting offers to acquire the Company.

50.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

51.     The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Gilat's Reasons for the Merger; Recommendation of the Gilat Board; (iii) Opinion of Jefferies LLC; and (iv) Certain Unaudited Projections of Gilat.

52.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Gilat**

53.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Gilat is liable as the issuer of these statements.

55.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

56.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

57.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

58.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

59.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

60.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Comtech

61.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.     The Individual Defendants and Comtech acted as controlling persons of Gilat within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or Board members of Gilat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

63.     Each of the Individual Defendants and Comtech was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

65.     Comtech also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

66.     By virtue of the foregoing, the Individual Defendants and Comtech violated Section 20(a) of the 1934 Act.

67.     As set forth above, the Individual Defendants and Comtech had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 6, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

Brian D. Long (#4347)

**OF COUNSEL:**

Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*